I move on to the last case on the calendar, 22-477 Flores-Torres v. Garland. Counsel, did he just leave? Counsel, thank you for your participation in our pro bono program. Whenever you're ready, we will hear your argument. Thank you. Good morning, Your Honors, and may it please the Court. My name is Luis Herrera, and I am appointed pro bono counsel for Jonathan Moises Flores-Torres. I'd like to reserve three minutes for rebuttal. Could you give me one minute, please? Yes. You are also pro bono counsel. Correct. So I owe you thanks as well. Thank you. You're welcome, Your Honor. Thank you. Go right ahead, please. I'll reserve three minutes and watch the clock. There are three independent paths to remand in this case, and I'm going to try to go from easiest to most difficult. The first is easy. It's error under Kumar and Alam, where this court on Bonk abrogated the single-factor rule in favor of a totality-of-circumstances approach for reviewing credibility determinations. Here, the IJ identified seven reasons for its adverse credibility finding. The BIA, ignoring all other factors affirmed on the single factor, that police reports offered by the Department rendered Mr. Flores incredulous. Now, because the BIA failed to even mention the other factors, it failed to review credibility under the totality-of-circumstances. Well, I don't know about that. I mean, it could have just believed that this one particular feature of the record was so substantial that it supported the adverse credibility decision on its own, regardless of whether there were other problems with credibility. Well, respectfully, Your Honor, under Kumar and Alam, that is not a credibility review under the totality-of-the-circumstances. Well, if the BIA had said something to indicate, you know, relying on this fact alone and really revealed the error, that would be one thing. But it seems to me, because they're pointing out this one feature, and it's by one feature regarding two different reports, that you're suggesting we should assume they applied the wrong rule. Assume they applied the correct rule. So what really tells us they made an error here? The fact that they didn't address any of the five or six other grounds identified by the IHA to sustain its adverse credibility finding. That, in and of itself, under Kumar and Alam, is reversible error. No, I think that's not right. I mean, we cannot, we're not required to deny a petition just because there's one piece of an adverse credibility determination that may be supported. We said in Alam, no, we are not required to do that. We're not bound to uphold it just because of one single factor. But that doesn't mean that the BIA can't look at the record and say, here's a very important set of considerations. He submitted a declaration, two declarations, that were very misleading about his criminal history, and that's a sufficient basis by which somebody can doubt his credibility. I don't think we've ever said you can't do that. Well, respectfully, Your Honor, that line of reason follows the falsus maxim, the idea that because he lied in one context, he's incredulous in all other contexts. And this court in Levy-Holder found that that falsus maxim is only applicable in pre-real ID cases. And, in fact, the falsus maxim in and of itself is, in effect, abrogated by Alam, because really it's just a single factor rule with a fancy name. The idea that because you're incredulous in one context, it washes over everything else. Well, let me ask you this. Here the IJ was obviously disturbed by what the IJ perceived as inconsistencies between the petitioner's account of his own criminal history and what other documents showed about the carjacking and the assault. Was it permissible for the IJ to take those into account? No, Your Honor, and that's the third path I was going to discuss, the more complex one. If the court wishes to go there. Well, what's the second one since you've got three? I'll try to go through it quickly. The second path to remand is that there are three separate instances in which the BIA ignored evidence and arguments. First, putting aside credibility, there were no less than six pieces of independent evidence corroborating Mr. Flores' risk of future harm in El Salvador. There was his brother's death certificate at AR-1434, a news article reporting the murder of his brother at AR-1438, the cover page of an I-589 submission of a younger brother, 1444. There's also sworn declarations by family members at AR-1475 to 1492, not to mention the country petitioner's expert's opinion that the events are plausible and consistent with the MO of the MS-13 and a medical doctor's opinion that Mr. Flores' scars are consistent with the types of injuries he claimed to sustain. The BIA ignored all of that. That's a clear violation of Alaska's SAMAYOA, COAL, and the CAT regulation. The second instance is just as in Rios, the BIA ignored an entire argument of theory of future harm. Two of the theories, actually, that Mr. Flores asserted were resisting recruitment and witness targeting. They were completely absent from the BIA's opinion. And even the IJ in her findings and analysis section failed to mention witness targeting or analyze his risk of future harm on account of witness targeting. And that's clear legal error under Rios and Sagaidak, where the court held that IJs and the BIA are not free to ignore arguments raised by a petitioner. And the third instance is that in rejecting those theories that it did address, the BIA departed from expert opinion without providing any justification for doing so. That's legal error under Alaska's SAMAYOA, COAL, and the CAT regulation that requires it to consider all evidence relevant to future torture. So turning to the third argument, the third path through remand, and that's relevance. The criminal history that the BIA relied on to find Mr. Flores not credible is not relevant to his DCAT claim. This is going to be a really tough argument for you. I understand, Your Honor. Credibility is always relevant? Respectfully, no. Credibility is always relevant? Credibility is something that's considered. It's not dispositive. I didn't say it was dispositive. I said it's always relevant. And you're talking about admissibility. Respectfully, Your Honor, the fact that credibility is relevant is not the standard for the admissibility of evidence in immigration court. I'm well aware of that. Tell me why it was error to admit this evidence, please. What's your best argument? Our best argument is that it had nothing to do with his DCAT claim. And this court in E2V Holder made clear that a person's criminal history is not a basis to deny them protection. But it's not being denied. No one's saying here because he committed a carjacking, he does not get deferral removal. What the IJ is saying is, effectively, because he submitted highly misleading declarations to me, I am not going to believe what he's saying. Sure, Your Honor. First, that's a false maxim, inapplicable. And second, Your Honor, that rule, the rule that we're going to allow evidence in immigration court because it's relevant to credibility is not the standard for admissibility in immigration court for good reason. But counsel, I'm still waiting for an answer to my question about why was it? We know what the standard is. Why was it error to admit this evidence? Because, Your Honor, it would open the door. That rule would open the door to all kinds of extraneous, otherwise inadmissible, irrelevant evidence in immigration court. I mean, the government could go so far as to admit evidence that somebody lied about their weight on a dating profile if that were the rule. Here, the government has been known to introduce inconsistencies that we find trivial. That we find trivial. That doesn't mean it wasn't admissible. It means we're not going to consider it. It's not material. It's not helpful. We're not going to give it much weight. Sure. But you're talking about admissibility. Yes, Your Honor. Yeah. And the REAL ID Act says that it can. We can see that's what the REAL ID Act says, that the IJ can base an adverse credibility finding on matters that are collateral to the claim, right, as long as they relate to credibility. But here, that's not what, well, it can do that. But that's not the standard. This is a different situation, though, because in this instance, wasn't it the petitioner who raised the issue? Yes, Your Honor. He submitted a declaration in response to a question on I-589, which he's obligated to respond to, and in a time where particularly serious crime determination was relevant. So we concede, if this were like Alcarez, where these reports, probation reports, were admitted in the particularly serious crime context, they would have been relevant to that issue, right? But that's not what happened here. What happened here is that the department, after it was already established that Mr. Flores' only claim for relief was for DCAT, tried to submit these reports as evidence in the substantive DCAT hearing, and that's not permissible. And so the point being there that— So let's just assume for a minute that at least on my scorecard they were admissible so that you have a fair opportunity to respond. I'm looking at the record at 502, and on that page, your client was asked, why were you arrested on May 14, 2016? And the answer was, to tell you the truth, I have no idea. The next question was, well, the next question was, you have no idea why you were arrested? Is that your testimony? Yes. Then the question was, the government attorney asked you if you assaulted someone in jail. Does that sound at all familiar to you, sir? Yes. Did that happen? Did you assault someone? No. He said no. So I appreciate that your client took the Fifth Amendment repeatedly, although I think all of this happened after his convictions were final. I don't think there was any pending criminal charges. I understand it. Setting that aside for a minute, I appreciate there are many other questions he chose not to answer, but he did answer these two. And the government's argument is that these answers are very relevant to the adverse credibility determination because they're quite contrary to other evidence in the record. What's your response to that, please? Yes, Your Honor. Again, their argument is that they're relevant to the credibility finding, which isn't the standard for miscibility. It shouldn't have gotten in anyway. They were objected to. Okay. So my hypothetical is, just on my scorecard, they're in, okay? Yes, Your Honor. So then what's your best argument? If these were considered, then what? Then they shouldn't be considered as it relates to credibility because they have nothing to do with the substantive DCAT claim, Your Honor. This is criminal history that happened in the United States, an entirely different country, years after he fled El Salvador. So if we actually look at the testimony that he testified to about El Salvador, everything is corroborated, and the BIA didn't address any of that. Judge Bress's point was that if the IJ thought that the IJ had reason to doubt your client's credibility, then the IJ doesn't have to believe everything that happened in the record regarding representations about what was happening in El Salvador. And they're very serious allegations. I am not making light of them. But I am obligated to apply the law, and I'm trying to figure out why you think this adverse credibility determination was infirm. The first answer to the question is that you think this evidence should not have been admitted, and if you lose there, then your response is it's not relevant to his claim because he's entitled to cat relief. We don't deport people who face torture. Is there another response to that question? Well, Your Honor, I can submit that it's been recognized that adverse credibility factors in one context may not be relevant in another context. That was in Camalthos in Gutierrez. Alcaraz is a great example there. Probation reports were admitted for the PSC determination. The IJ credited the government's version over Alcaraz's testimony, but it still treated the DCAT claim as it had believed his testimony as to the DCAT portion. It didn't make an adverse credibility finding there. And in Gutierrez, that was a Salvadoran cat claim. Well, no, Gutierrez was an applicant for registry where good moral character was a required element, and so the evidence of police reports or unlawful action was relevant there because it was relevant to an element. Right. I mean, basically what you're trying to get us, the rule you want, it seems to me, is a rule that says if you're going to doubt someone's credibility on a cat claim, it has to be related to the torture allegations and the past torture and the future torture. It can't be related to anything else. And what the implication of that would be is that somebody could go to the IJ and just blatantly lie about something, and that seems to be what the IJ felt was going on here, and yet the IJ would be bound to treat that person as credible. I don't know that we've ever said that the IJ is required to do that. Not necessarily, Your Honor. Maybe as to one issue, but as to another issue, not at all. I mean, that's what CAMALFAS stands for, the fact that an adverse credibility in one context can't wash over the DCAT claim. Yes, but we also said we don't follow the rule anymore that an inconsistency has to go to the heart of the claim. We're looking at the totality of the circumstances, the totality, everything that's in the record. Yes, Your Honor. Would you like to reserve some time? I would. Thank you very much. You bet. We'll hear from Government's Counsel, please. Good morning, Your Honor, and may it please the Court. Margo Carter, United States Attorney General. The Court should deny the petition for review. Here, even setting aside the adverse credibility finding, the record still doesn't compel the conclusion that Petitioner, more likely than not, faces torture in El Salvador. The petitioner presented essentially two theories for his fear of torture in El Salvador. The first was imputed gang membership, that somehow the Salvadoran government would view his admission in his I-213 that he was a member of the Sirenios gang, and somehow get access to that information, and treat him as a gang member upon return to El Salvador. And his second claim was that his past experiences, the harm to his family they experienced, the gang recruitment attempts, and the harassment that he experienced in El Salvador, that those would lead the government, that those would lead to his harm if he were to return to El Salvador. With respect to the imputed gang membership claim, the Board addressed this in terms of the hypothetical links in the chain, each being not more likely than not. And the petitioner failed to establish that he would be more likely than not to be identified as a gang member. Indeed, Petitioner's own expert witness indicated that his lack of gang tattoos, his work history in El Salvador, his prior refusal to accede to gang recruitment attempts, these would all weigh against the Salvadoran government considering him an imputed gang member. And even if he were criminalized and detained, the Board considered the fact that Petitioner failed to establish a specific intent to torture him, and that the squalid prison conditions in El Salvador by themselves would not establish a significant likelihood of torture. With respect to the petitioner's claim regarding the personal experiences he had in El Salvador where his family experienced harm and he was subject to gang recruitment attempts, the petitioner failed to establish the Salvadoran government's acquiescence. Indeed, the government has taken steps to combat violence. The Department of Homeland Security submitted 75, nearly 75 pages of evidence detailing those steps to combat violence. And that included articles regarding the nationwide drop in crime, the arrests of numerous gang members and their leaders, and Salvadoran government anti-gang efforts. So even considering the petitioner's testimony as credible, the petitioner still failed to establish government acquiescence to his future harm. And the evidence of Petitioner's own expert witness was clear on this point, that the El Salvadoran government is working to blunt gang violence, that the police in El Salvador are, quote, continuing to work to try to prevent gang violence in the country, and the homicide rate in El Salvador is at its lowest in 20 years. And that's Petitioner's expert witness testimony, and that's on pages 572 and 573 of the administrative record. And contrary to what the petitioner suggested, the board and the immigration judge both considered extensively that expert witness evidence and testimony. The board cited to the immigration judge's decision, where the immigration judge in turn referenced the expert witness statements on pages, I believe, 32 to 35 of the immigration judge's decision, and that would be on page five of the administrative record, where the board cites the immigration judge's decision referencing the expert testimony. So the expert testimony wasn't overlooked. And again, with regard to the imputed gang membership theory of the case, the petitioner didn't establish that each of those hypothetical links in the chain would be more likely than not. So in short, even setting aside the adverse credibility finding in this case, the petitioner does not really have a basis on which he can show that the record compels the conclusion that he faces torture in El Salvador with the acquiescence of the Salvadoran government. If the court has no further questions, the government will... Can I just, before you sit down, and I recognize you're not, you seem to be arguing that we should just deny the petition while assuming the petitioner was credible, which was an alternative basis for the IJ and BIA's decision, but just so I understand the government's position on the adverse credibility determination, was it permissible for the IJ to look at these inconsistencies between the petitioner's submissions and the criminal record when the petitioner had introduced those materials into the immigration proceedings? Absolutely. The petitioner made credibility an issue by submitting an amended declaration in which he added a section to deal with his criminal history. He added a section to his declaration. His original declaration was submitted before he committed his crimes. He was caught in the United States prior to his criminal offenses, and he had submitted an initial application for asylum, withholding of removal, and protection under the Convention Against Torture. And he had a declaration submitted with that. When it came time to apply for deferral of removal under the Convention Against Torture, he amended his application. He added an entire section in which he downplayed his connection to the crimes that he was duly convicted of, and for which he was sentenced to years in prison. The immigration judge rightly did a bit of a double-take upon seeing the claims in the declaration in contrast to the convictions that the petitioner had, and wanted to get more information and permit the petitioner to have an opportunity to explain the apparent discrepancy between his minimal discussion of, or minimizing discussion, of his serious criminal history in his declaration. What Mr. Herrera says is basically, well, this did not have to do with his account of torture in his home country. And so because it didn't have anything to do with that, it couldn't be the basis for an adverse credibility determination. Your Honor, it still goes to the petitioner's credibility. His ability to provide an accurate account of his claim is called into question when he is willing to say whatever he thinks the judge, the immigration judge, might want to hear in order to bolster his case or embellish his case or to make himself appear in the best light. And when portions of the declaration that he submitted under oath as part of his application for protection from removal in the United States, portions of that declaration are questionable. It is reasonable for the immigration judge to wonder how much else in that declaration can be relied upon where it seems as though the petitioner is willing to say anything in order to portray himself in a better light. Is this application of the falsus maxim? I think this is not an application of the falsus maxim because I think that the case where the Ninth Circuit rejected that falsus maxim in part had to do with the agency rejecting a claim that was made in a motion to reopen, I believe. And he made this claim and the petitioner in that case made a claim. I think it was Yang versus Lynch. The petitioner made a claim in a motion to reopen regarding another basis for asylum. And so because the prior asylum application had been rejected based on lack of credible testimony, the motion to read testimonies or statements in the motion to reopen were similarly rejected. So I don't think this is an application of the falsus doctrine. It's more just a matter of under the totality of the circumstances, the petitioner simply was not credible in this case because he had put evidence into the record. I mean, he put his own credibility on the line by setting forth this declaration that seemingly downplayed his involvement in the crimes for which he was convicted. And then when called upon to answer questions about those convictions, he undermined his credibility by denying that he knew why he was arrested. And given all of that, I think the agency reasonably looked at the totality of the circumstances in this case and concluded that the petitioner was not credible and that the credibility determination that the agency reached was reasonable and certainly supported by substantial evidence in the record. And in any event, the petitioner can't establish that the record compels the conclusion that he was credible where there are blatant inconsistencies within his testimony and within his declaration, and given the fact that he was actually convicted of these serious criminal offenses. But in short, even setting aside that adverse credibility finding, which finds ample support in the record, the petitioner still can't prevail on either theory that he presents. And in any event, he did not address the actual essence point, which is dispositive of his claimed fear of harm based on his past experiences in El Salvador. If the court has nothing further for the government, we suggest that the court should deny the petition for review. And thank you. Thank you. We'll hear from opposing counsel in Roberto, please. Thank you, Your Honors. Speaking first to the adverse credibility finding, if the IJ doubted his credibility based on an out-of-context lies, have nothing to do with the DCAT claim, what it should have done and what it did do was look to any corroborating evidence. And the BIA didn't do that. That's where the BIA erred because it didn't consider credibility under the totality of the circumstances and it prevented this court from doing so also. In fact, it ignored expert evidence, highly probative, potentially dispositive expert evidence corroborating his account of what happened in El Salvador. And that's clear legal error under Velazquez and Hernandez. What it comes down to here is what is the totality of the circumstances? And any way you slice it, an adverse credibility finding based on his criminal history in the U.S., 2016, is not the totality of the circumstances in light of his DCAT claim. You can look at it one of two ways. I mean, you can look at it in light of everything the IJ considered, which were seven factors, and only one or maybe two of them were discussed, and that's not in the totality of the circumstances. Or you could look at it in light of his... which are his credibility, criminal history, 2016, and DCAT. One of the two is not a credibility determination under the totality of the circumstances. And speaking to acquiescence, we didn't weigh that argument at all. We argued it on page 38 of our opening brief and in our reply brief. The government argues that general effectiveness... What it cites from the country conditions is general effectiveness by the government, that they're combating gang violence and that they've been generally good at it. But that's not the standard for acquiescence. We know under Pareto, the standard for acquiescence is that if any official, even one official, at any level acquiesces in the torture, that's enough. And here there was expert evidence that that would be so. Potentially dispositive, probative expert evidence where the expert said, quote, unquote, rather than protect Mr. Flores, state security forces are likely to target him because they disdain criminal deportees at AR-1510 and at AR... Oh, sorry, that was AR-1507 and at AR-1510. Due to the corruption of El Salvadoran government police at all levels, it is more likely that an official at some level inclined to help the gang would hand him over. The BIA didn't address those, which it was required to, under Hernandez and Velazquez-Semilloa, and that's a clear error. Barring any other questions, I will submit the case. Thank you very much, Your Honors. Thank you. We'll take that case under advisement. That's the last case on the calendar today, so we'll stand in recess. All rise. Fury hearing. All persons having had business with the Honorable of the United States Court of Appeals for the Ninth Circuit will now depart for this court for this session. Now stands adjourned.
judges: CHRISTEN, BRESS, Antoon